**IN THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CASE NO:**

| | |
|---|---|
| ALAN PARSONS, an individual; and APPERTAINING LLC, a California limited liability company;<br><br>        Plaintiffs,<br><br>  v.<br><br>JOHN REGNA, including d/b/a JOHN REGNA ARTIST MANAGEMENT, an entity of unknown form, WORLD ENTERTAINMENT ASSOCIATES OF AMERICA, INC., a New Jersey corporation, and DOES 1-20, inclusive,<br><br>        Defendants. | **COMPLAINT** |

## INTRODUCTION

1.　From 2009 to 2018, defendant John Regna and his company, World Entertainment Associates of America ("WEAA"), pledged their contractual and fiduciary duties to assist the world-renowned, Grammy Award-winning musical performer, songwriter, producer, and engineer Alan Parsons ("Parsons"), co-founder of The Alan Parsons Project, in continuing to grow his brand for live concert appearances around the world.　In furtherance of these duties, Regna and WEAA knew and represented to third parties that the use of The Alan Parsons Project name for a live performance that did not include the appearance of Parsons was "fraudulent," "counterfeit," "duped" the public, and – in at least one instance – was the product of a "renegade former employee trying to capitalize on ALAN PARSONS' name, likeness, and his body of work."

2.　But after Parsons' loan-out company terminated Regna and WEAA – in part due to Regna's erratic and intolerable behavior – Regna has disgracefully become exactly what he

#39188358 v1

promised to protect Parsons *against*: a renegade former representative trying to capitalize on Parsons' name, likeness, and body of work. Regna and WEAA are maliciously orchestrating, and are the moving forces behind, a campaign to falsely advertise, promote, and hold fraudulent concerts in the United States and around the world by a so-called "Original Alan Parsons Project Band" which they falsely claim consists of "THE MEN WHO MADE THE RECORDS THIRTY YEARS IN THE MAKING – STARRING THE ALAN PARSONS PROJECT ORIGINAL MUSICIANS." One such performance has already occurred and dozens more are being planned, prepared, and promoted by Regna and WEAA from their United States offices. Regna and WEAA are utilizing other variations of the false advertising, including but not limited to "The Original Alan Parsons Project Band," "The Alan Parsons Project Band," the "Alan Parsons Project Original Musicians," the "Alan Parsons Project Musicians," "The Voice Of The Alan Parsons Project," "The Original Members Of The Alan Parsons Project," and "The Project - Original Voice Original Musicians Of The Alan Parsons Project And Friends."

3.     Regna, acting for himself and through WEAA, is a concert promoter and entertainment manager who represents various musical performers, primarily "tribute" and "knock-off" bands, and small foreign circuses. Parsons is famous as one of the two founding members, and only members, of The Alan Parsons Project, a duo (with Eric Woolfson) that created, wrote, performed, and recorded multiple platinum (million-selling) albums and had 17 Billboard Top 100 singles between 1976 and 1987, as well as for his engineering work on legendary albums such as the Beatles' *Abbey Road* and Pink Floyd's *The Dark Side of the Moon*.

4.     In 2009, Regna aggressively solicited Parsons' business, promising his and WEAA's "quality representation" and loyalty to Parsons to help continue to grow Parsons' brand – and inducing Parsons to have his loan-out company enter into a contract with Regna and WEAA pursuant to which they would solicit and obtain live performance bookings for Parsons in the United States, and around the world, in exchange for agreed-upon percentage commissions, and would collect, manage, safeguard, and faithfully and honestly account for the financial compensation derived from such performances. In 2018, after much careful

2

deliberation, Parsons caused his loan-out company to terminate Regna's and WEAA's services. Apparently angered by the loss of his most prominent and prestigious client, Regna has commenced a spiteful, global campaign to destroy Parsons' name and earning ability and threaten his livelihood.  Regna and WEAA have also converted a substantial amount of money from Parsons, despite admitting that they owe the money to him.

5.      Regna's and WEAA's breaches of contract, breaches of fiduciary duty, unfair competition, and infringement and dilution of Parsons' trademark and related rights in his name and image have caused and are causing Parsons many millions of dollars in actual damages. Such conduct is also fraudulent, oppressive, and malicious, justifying an award of substantial additional punitive and exemplary damages to punish Regna and WEAA and deter them from engaging in such future despicable conduct toward Parsons or any other clients who, like Parsons, exercise their right to sever business ties with them.

6.      This Court has jurisdiction under 15 U.S.C. § 1121; 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1332 (diversity of citizenship) and 28 U.S.C. § 1338(b) (unfair competition and trademark infringement).

## PARTIES

7.      Plaintiff Parsons is an individual who at all relevant times resided in California. During the course of their business relationship with Parsons, Regna and WEAA knew, understood, and represented to third parties that "Alan Parsons' base of operations is in the United States of America from which business with promoters and venues in no less than 20 outside countries is the customer base."

8.      Plaintiff Appertaining LLC ("Appertaining") is a limited liability company organized and existing under the laws of the State of California, with a principal place of business in California, and is duly authorized to conduct business in the State of California and elsewhere.  Appertaining is a "loan-out" company owned and controlled by Parsons and through which Parsons conducts certain business activities.  Parsons and Appertaining are sometimes referred to herein collectively as "Plaintiffs."

3

9.     Defendant Regna is an individual doing substantial business in the State of Florida and in this District, including under the name John Regna Artist Management, an entity of unknown form.  Defendant WEAA is a corporation incorporated under the laws of the State of New Jersey which is authorized to conduct business in Florida, and is doing so from its principal business address in Orlando, Florida .  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this District, and a substantial part of the events or omissions giving rise to the claim occurred in this District.

10.     WEAA is subject to personal jurisdiction in Florida and in this judicial district pursuant to Florida's Long Arm Statute, Fla Stat. §§ 48.193(1)(a)(1) (by virtue of operating, conducting, engaging in, or carrying on a business or business venture in this state and having an office), § 48.193(1)(a)(2) (by virtue of committing a tortious act within this state) and §48.193(2) (by virtue of being engaged in substantial and not isolated activity within this state).  WEAA is subject to personal jurisdiction based upon the facts alleged herein and because it has purposefully availed itself of the privilege of conducting business activities in Florida such that it should have reasonably anticipated being haled into court in Florida.  Additionally, Defendants are subject to the jurisdiction of this Court based upon consent, having stated in their motion challenging jurisdiction in a California action recently instituted by Parsons that the action against Defendants should be filed in Florida.

11.     Plaintiffs are unaware of the true names and capacities, whether individual, corporate, associate, or otherwise, of defendants Does 1 through 20, inclusive, or any of them, and therefore sues these defendants, and each of them, by such fictitious names.  Plaintiffs will seek leave of Court, if required, to amend this Complaint when the identities of these defendants are ascertained.  All of the allegations of this Complaint with respect to Regna and WEAA apply equally to each and every one of these Does.  Regna, WEAA, and Does 1-20 are sometimes referred to herein collectively as "Defendants."

12.     Plaintiffs are informed and believe and on that basis allege that each of the Defendants conspired and acted in concert with one another to commit the wrongs against

4

Plaintiffs alleged herein, and in doing so were at all relevant times the agents, servants, employees, principals, joint venturers, alter egos, and/or partners of each other. Plaintiffs are further informed and believe, and on that basis allege, that in doing the things alleged in this Complaint, each of the Defendants was acting within the scope of authority conferred upon that Defendant by the consent, approval, and/or ratification of the other Defendants. Plaintiffs are further informed and believe and on that basis allege that Regna and WEAA controlled and directed, and financially benefited from, all of the unlawful activities alleged herein; had an apparent or actual partnership with the persons or entities that conspired with them to engage in the unlawful acts alleged herein; induced and continue to induce such persons or entities to engage in such unlawful conduct; supplied and continue to supply unlawful products and services to such persons with knowledge that they are unlawful; had and have authority to bind such persons or entities in transactions with third parties concerning the subject matter of such unlawful conduct; and exercise direct ownership of, control over, and monitoring of the infringing products and services described herein.

13.     The violations of law alleged herein, to the extent some of them have taken place and are taking place outside the geographic territory of the United States, have an effect on American commerce that is sufficiently great so as to present a cognizable injury to Plaintiffs under the laws alleged to have been violated herein, including the Lanham Act, and the interests of and links to American foreign commerce are sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial authority.

14.     The amount in controversy in this action exceeds the jurisdictional minimum of this Court, the full amount of which will be proven at the time of trial.

## FACTS COMMON TO ALL CAUSES OF ACTION

15.     Since the 1960s, Parsons, through his extraordinary talent, creativity, and hard work, has built a valuable brand in his name, image, and related musical and professional endeavors, perhaps best exemplified by the world renowned musical duo The Alan Parsons Project (collectively the "Parsons Marks"). Parsons is the only surviving member of The Alan

Parsons Project, as the other member of the duo, Eric Woolfson, passed away in 2009.   The

Parsons Marks include, but are not limited to:

| **Mark** | **Reg. No.** | **Class** | **Goods/Services** |
| --- | --- | --- | --- |
| ALAN PARSONS | 4,217,219 | 9 | Audio and video recordings featuring music and artistic performances; Compact discs featuring music |
| ALAN PARSONS | 4,991,219 | 41 | Entertainment services in the nature of live musical performances |
| ALAN PARSONS | 5,074,130 | 25 | Caps; Hats; Jackets; Long-sleeved shirts; Shirts; Sweat shirts; T-shirts; all for the purpose of promoting the trademark owner, the trademark owner's performances and appearances, the trademark owner's music and music video sales, the trademark owner's music and video productions, and the trademark owner's interests |
| Alan Parsons Live Project | 5,848,522 | 41 | Live performances by a musical group |

Reg. No. 4,217,219, for the ALAN PARSONS mark for use on "[a]udio and video recordings

featuring music and artistic performances; Compact discs featuring music," in International Class

9, is incontestable by virtue of its longstanding use and registration.   15 U.S.C. § 1065.   In

addition to these registrations, Parsons has engaged in common law use of the mark THE ALAN

PARSONS PROJECT since at least as early as 1976, when The Alan Parsons Project's first

album, *Tales of Mystery and Imagination*, was released.

16.     In 2009, Appertaining, on the one part, and Regna and WEAA, on the other part,

entered into a contract which was partly written, partly oral, and partly implied (the "Contract").

Regna and WEAA aggressively sought to persuade Parsons to cause Appertaining to enter into a

broad and all-encompassing contractual relationship under which Regna and WEAA would

control virtually every aspect of Parsons' professional and musical endeavors.   Parsons, having

personally built the value of the Parsons Marks over many decades without any involvement by Regna or WEAA, resisted these entreaties and chose instead to limit the scope of the Contract to live performances and appearances by Parsons, generally under the name The Alan Parsons Live Project – except to the extent Appertaining expressly and in writing authorized Regna and WEAA to engage in other, specifically enumerated activities on behalf of Parsons or Appertaining.  The material terms of the Contract relevant to this Complaint were that Regna and WEAA promised to solicit and obtain opportunities for Parsons to engage in live performances or appearances; to obtain Appertaining's consent to commence negotiations for each such performance or appearance; to negotiate the terms and conditions of each such performance or appearance; to obtain Appertaining's consent to such terms and conditions; to present the final contract for such performance or appearance to Appertaining for Parsons' approval and signature; to make necessary arrangements in preparation for the performance or appearance; to ensure that all required licenses and consents for such performance or appearance were obtained; to personally collect and safeguard Appertaining's compensation for the performance or appearance, and ensure that it was collected in the proper amount; and to faithfully and accurately account to Appertaining for such compensation on a timely and regular basis, less Regna's and WEAA's agreed-upon commission for the performance or appearance, which was the consideration paid by Appertaining to Regna and WEAA pursuant to the Contract.  At no time did Regna or WEAA own any property interest in any of Parsons' recordings, performances or live appearances or in any of the Parsons Marks.  The Contract was terminable by Appertaining at will.

17.     Parsons and Appertaining, on the one part, and Regna and WEAA, on the other part, had a fiduciary relationship of principal and agent with respect to live musical performances and personal appearances by Parsons as well as with respect to Regna and WEAA managing, maintaining, and continuing to grow the already enormous value of the Parsons Marks with respect to such performances and appearances, and otherwise as specifically agreed upon by the parties in writing (the "Principal-Agent Relationship").  Regna, including on behalf of WEAA,

specifically and without limitation promised Parsons and Appertaining "quality representation" as to all matters encompassed by the Principal-Agent Relationship.  Parsons and Appertaining entrusted Regna and WEAA with fiduciary responsibilities and duties in connection with every aspect of the Principal-Agent Relationship, including but not limited to the booking of live performances and appearances, the receipt, handling, safekeeping, and proper accounting of monies earned by Appertaining pursuant thereto, and in connection with managing, maintaining, and continuing to grow the already enormous value of the Parsons Marks.  Regna described his and WEAA's role in the Principal-Agent Relationship as "to keep the cash flow coming, grow Alan's music brand, and keep everything on the up and up with Alan's concerts and concert money…"

18.     Among other things encompassed by the Principal-Agent Relationship, Regna and WEAA assumed fiduciary obligations to Parsons and Appertaining with respect to creating, maintaining, marketing, promoting, and otherwise exploiting and popularizing the Parsons Marks as a prominent, successful, and valuable concert attraction, focused on Parsons.  Regna and WEAA knew and understood that a principal element of their fiduciary obligations to Parsons and Appertaining was continuing to grow and maintain this brand so that Parsons could timely monetize his intangible property and personality rights through live performances during the brief window of time within which Parsons intended to continue to engage in live performances.  Regna and WEAA knew that Parsons' name and the names The Alan Parsons Project and the Alan Parsons Live Project had particular and unique value to Parsons and Appertaining during the period of time from 2018 through 2020, when Parsons and Appertaining anticipated that the confluence of the value and earning potential of those names and marks, coupled with the quality and quantity of Parsons' anticipated live performances, would be at their absolute peak.

19.     As part of their fiduciary obligations to Parsons and Appertaining, Regna and WEAA specifically promised that their loyalty to the brand they were helping to grow and maintain would survive the termination of their business relationship.  Regna repeatedly claimed

8

that he was Parsons' friend and was devoted to ensuring that Parsons would enjoy a happy and secure lifestyle after his retirement from life performances.   These promises necessarily contemplated that, even after the relationship terminated, Regna and WEAA would not do anything to diminish or damage the brand that they were generously compensated for helping to grow, maintain, and protect.   Separately and independently of the tasks required by the parties' implied/oral/written contract, fiduciary obligations arose from the parties' ongoing relationship in which Regna and WEAA knew and accepted that Parsons and Appertaining placed trust and confidence in Regna and WEAA and relied upon their fidelity and performance of professional services to grow, maintain and protect Parsons' rights and brand.   Defendants undertook to protect Parsons in this regard and Parsons depended on Defendants to do so.

20.   Regna, including on behalf of WEAA, knew and understood how critically important it was that the Parsons Marks be protected from infringement, dilution, misuse, and public and commercial confusion.   In the course of the Principal-Agent Relationship, Regna and WEAA fully understood, and represented to Parsons and Appertaining and members of Parsons' business team as a matter of historical and legal fact and as "the policy held by … World Entertainment Associates of America Inc. and John Regna Artist Management" that:

(a)   "Alan Parsons and Eric Woolfson were the sole members of the Alan Parsons Project.   By virtue of that, there cannot be any ex-members of the Alan Parsons Project other than Alan Parsons and Eric Woolfson.… All singers and musicians other than Alan Parsons and Eric Woolfson, on any Alan Parsons Project recordings, were engaged on a work-for-hire basis."

(b)   "[T]he words 'Alan Parsons' in the title or subtitle of any third party live performance … when used together, are trademarked and owned by Alan Parsons.   Using these two words without the express written consent of Alan Parsons is a violation of his exclusive rights attached to that trademark.   By law, no outside party can use the words 'Alan Parsons' without the authorization of the trademark owner, Alan Parsons, or

#39188358 v1

his licensees if any exist…. There are no licensees or other parties authorized to grant rights to the usage of the words 'Alan Parsons.'"

(c)     "There is no usage granted for the rights to the words 'Alan Parsons' to any third party for the purposes of marketing without the express written consent of Alan Parsons, personally.  No other party, whether attached to Alan or attached to any other entity, can use the words 'Alan Parsons' for commercial purposes related to live performances."

(d)     "[A]ll work-for-hire musicians and singers are prohibited from saying that they are an ex-member of the Alan Parsons Project (a recording franchise), or the Alan Parsons Live Project (a touring and recording franchise).  To say they are 'ex-members' either editorially or in an attempt to market their services or live performances, or in a band name or subtitle, would be incorrect and not accurate."

(e)     "What can occur with usage of the words 'Alan Parsons', even in a title or sub-title of a show called 'A BAND' or 'A PERSON' … is that rogue promoters will try to blur the line and will almost certainly advertise in some areas that 'Alan Parsons' or the 'Alan Parsons Project' will be appearing.  The use of the word 'Project' in ANY band title would ALSO be viewed as a lead element for such rogue promoters…. The actions of possible rogue promoters would create incorrect advertising and dilute the marketplace for Alan Parsons and/or the Alan Parsons Live Project – and … would force us to implement legal action."

21.     Further, during the term of the Principal-Agent Relationship, Regna, including on behalf of WEAA, represented to third parties that:

(a)     "There were two, and only two, members of the Alan Parsons Project."

(b)     Others "simply cannot use the words ALAN PARSONS, period, in a show title or show sub-title."

(c)     The use of the name "The Alan Parsons Project" for a live performance that did not include the appearance of Parsons was "fraudulent," "counterfeit," "duped" the public, and was a product of a "renegade former employee trying to capitalize on ALAN

PARSONS' name, likeness, and his body of work" – Lenny Zakatek, one of the musicians with which Regna and WEAA are now working (along with Andrew Powell, David Paton, Stuart Elliott, Richard Cottle, Laurence Cottle, and David Bainbridge) in just such a manner to undermine and violate Parsons' rights.

(c)     "[T]o promote IN ADVERTISING the fact that Mr. Zakatek was a 'member' or 'former member' of the Alan Parsons Project would be incorrect, untrue and false advertising."

(d)     Zakatek "was never a member of the Alan Parsons Project.  [He] worked on a work-for-hire basis from recording to recording as a session singer.  Period."  Based on this historical fact, "[t]he situation cannot change," now or in the future.

22.     In furtherance of their fiduciary duties to Parsons and Appertaining, Regna and WEAA negotiated numerous contracts for live performances by Parsons and The Alan Parsons Live Project.  The terms and conditions of these contracts were confidential, secret, and nonpublic.  Parsons and Appertaining took all reasonable and appropriate steps to maintain the confidentiality and secrecy of these contracts, and justifiably expected and understood, as part of Regna's and WEAA's fiduciary obligations, that Regna and WEAA were doing so as well.  By virtue of the Principal-Agent Relationship, Regna and WEAA were exposed to additional confidential, secret, and nonpublic information about Parsons, Appertaining, and The Alan Parsons Live Project, including but not limited to information relating to the specific terms and conditions on which venues and promoters were willing to pay for Parsons' performances and that Parsons and Appertaining would accept, and the particular geographic locations and types of venues at which Parsons and Appertaining would best be able to monetize and receive compensation from such performances.

23.     On April 2, 2018, after long and careful deliberation and for many good reasons to be more fully explained at trial, Parsons and Appertaining terminated their Principal-Agent Relationship with Regna and WEAA.  Despite Regna's and WEAA's outrageous and unprofessional behavior, particularly towards the end of the Principal-Agent Relationship,

Parsons and Appertaining asked only for "an amicable parting and a smooth transition." Regna, including on behalf of WEAA, responded that "I respect that decision" and "I cannot let business stand in the way of hurting how I feel about the both of you [Parsons and his wife] as friends. I still hold you both in very high regard."

24.     Notwithstanding, and contrary to, those disingenuous representations, Regna and WEAA promptly commenced a scheme to destroy the value of the Parsons Marks for live performances, and as a whole – seeking not only to severely and irreparably damage and destroy the value of the Parsons Marks to which Regna and WEAA had modestly contributed (work for which they had already been fully and generously compensated) but the value of the Parsons Marks that Parsons had built, maintained, and protected for decades before ever encountering Regna and WEAA.

25.     Regna's and WEAA's ongoing scheme was and is blatantly unlawful, infringing, and breaches their legal duties to Parsons and Appertaining. Regna and WEAA, from their United States offices, have solicited various session musicians, including but not limited to Lenny Zakatek, who had performed as workers for hire decades ago on recordings by The Alan Parsons Project to embark on a worldwide live concert tour under the false and misleading name "The Original Alan Parsons Project Band." Regna and WEAA are now advertising and promoting the so-called "Original Alan Parsons Project Band" around the world as "THE MEN WHO MADE THE RECORDS THIRTY YEARS IN THE MAKING – STARRING THE ALAN PARSONS PROJECT ORIGINAL MUSICIANS" and falsely claiming that this knock-off band involves "5 of the 7 original band members." Regna and WEAA are utilizing other variations of the false advertising, including but not limited to "The Original Alan Parsons Project Band," "The Alan Parsons Project Band," the "Alan Parsons Project Original Musicians," the "Alan Parsons Project Musicians," "The Voice Of The Alan Parsons Project," "The Original Members Of The Alan Parsons Project," and "The Project - Original Voice Original Musicians Of The Alan Parsons Project And Friends." Such advertising by Regna and WEAA directly contradicts their own policies and representations they made to third parties

during the Principal-Agent Relationship – that "[t]here were two, and only two, members of the Alan Parsons Project" – Parsons and Woolfson. Moreover, Regna and WEAA know that their description of this imposter band is false and misleading – including because some of the musicians involved never appeared on any of the ten The Alan Parsons Project albums, appeared on only one or a few, or appeared on only a few tracks on various albums. None of them appeared on the first album. They are manifestly not the "Original" musicians of or with The Alan Parsons Project or "THE MEN WHO MADE THE RECORDS." Nor have any of these work-for-hire musicians ever performed in concert as "members" of The Alan Parsons Project, or been named in any recording or concert contracts to which the Alan Parsons Project was a party.

26.     Regna's and WEAA's knock-off band even includes Zakatek – the very performer who Regna and WEAA insisted to third parties during the Principal-Agent Relationship "was never a member of the Alan Parsons Project," and only "worked on a work-for-hire basis from recording to recording as a session singer. Period." The knock-off band is exactly what Regna and WEAA represented to third parties during the Principal-Agent Relationship would be, was, and is, "fraudulent," "counterfeit," "dupe[s]" the public, and was and is a product of a "renegade former employee trying to capitalize on ALAN PARSONS' name, likeness, and his body of work."

27.     Further, Parsons and Appertaining are informed and believe and on that basis allege that Regna and WEAA are, in furtherance of their unlawful scheme, using information relating to the specific terms and conditions on which venues and promoters were and are willing to pay for Parsons' performances and that Parsons would accept, and the particular geographic locations and types of venues at which Parsons would best be able to monetize and receive compensation from such performances.

28.     In addition, Regna and WEAA have, by way of example only:

(a)     Withheld and converted to themselves $35,000 of Appertaining's money from a live performance at On The Blue Cruise. Regna and WEAA initially claimed, through an

attorney, that they were withholding the money based on a (frivolous) third party claim by a musician named Andrew Powell who himself is and has been a part of the imposter band spearheaded by Regna, and that they would transmit the money to Appertaining as soon as Powell disclaimed any interest in it.  After Appertaining incurred legal fees to obtain such a disclaimer from Powell and to have it transmitted to Regna and WEAA, Regna and WEAA have continued to withhold the money from Appertaining maliciously and without basis and, on information and belief, have converted it to their own use.

(b)     Caused promoters around the world to place "holds" on venues for shows that Parsons and Appertaining have not approved and that post-dated the termination of the Principal-Agent Relationship.   Such unauthorized "holds" placed Parsons and Appertaining in the untenable position of either having Parsons perform shows for which he had no signed contracts, at which he did not wish to perform, and/or for which Appertaining could not negotiate suitable arrangements, or damaging Parsons and Appertaining's reputations by declining such shows after the "hold" was placed.  On information and belief, Regna's and WEAA's purpose and intent in engaging in this conduct was to either induce Parsons to perform at such shows and pay a commission to Regna and WEAA notwithstanding Appertaining's termination of the Contract, or to offer such promoters their infringing, inferior knock-off "Original Alan Parsons Project Band" in lieu of Parsons and in direct and unfair competition with him and Appertaining.

(c)     Posted, have failed to take down despite the termination of the Principal-Agent Relationship, have failed to account to or pay Parsons or Appertaining for, and continue to profit and otherwise benefit from advertising and related revenue from, a video featuring Parsons' name and performance on a "John Regna" channel on YouTube, which has garnered over 42 million views.

(c)     On information and belief, maintained unauthorized ownership of internet domain names that were and are confusingly similar to the Parsons Marks.

29.     As a proximate result of the conduct alleged above, Regna and WEAA have severely harmed Parsons and Appertaining in an amount according to proof.  Such conduct also justifies the imposition of substantial punitive and exemplary damages against Regna and WEAA.

**FIRST CAUSE OF ACTION**
**[Federal Trademark Infringement – 15 U.S.C. § 1114]**
(By Parsons Against All Defendants)

30.     Parsons realleges and incorporates by reference paragraphs 1-29 of this Complaint as if fully set forth herein.

31.     The Parsons Marks are inherently distinctive and/or have acquired secondary meaning as the source of all products and services advertised, marketed, and sold in connection with Alan Parsons, including The Alan Parsons Project and The Alan Parsons Live Project.

32.     Defendants, through the acts and omissions described herein, have used and continue to use in commerce, counterfeits, reproductions, or colorable imitations of the Parsons Marks in connection with the sale, offering for sale, distribution, and advertising of goods and/or services.

33.     Parsons has not authorized, licensed, or given permission to Defendants, or any of them, to reproduce, counterfeit, imitate, or use the Parsons Marks in any manner whatsoever including, without limitation, on the infringing products and/or services being marketed, advertised, sold, imported, or distributed by Defendants under or through use of the Parsons Marks.

34.     Defendants' above-described conduct concerning the Parsons Marks is likely to cause, and has caused, confusion, including initial interest confusion, reverse confusion, and post-sale confusion, or to cause mistake, or to deceive as to source, origin, affiliation, approval, sponsorship, and/or association with Parsons.

35.     Defendants' actions constitute trademark infringement pursuant to 15 U.S.C. § 1114.  Defendants have committed the acts alleged above with full knowledge of and in disregard of Parsons' rights in and to the Parsons Marks.  Defendants' actions were willful and

for the calculated purpose of misleading and deceiving the public in order to trade on and profit from Parsons' goodwill.

36.     Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Parsons great and irreparable injury that cannot fully be compensated or measured in money.  Parsons has no adequate remedy at law.  Parsons is entitled to preliminary and permanent injunctions prohibiting acts and conduct that are likely to continue to cause confusion, mistake, or to deceive as to source, origin, affiliation, approval, or sponsorship. Pursuant to 15 U.S.C. § 1116(a), Parsons is entitled to an order enjoining Defendants from further infringing the Parsons Marks.

37.     Pursuant to 15 U.S.C. § 1117(a), Parsons is entitled to an order requiring Defendants to account to Parsons for any and all profits derived by Defendants from their infringing conduct, and to an order awarding all damages sustained by Parsons by reason of Defendants' infringing conduct.

38.     Pursuant to 15 U.S.C. §§ 1117(b) and (c), in addition to compensatory damages, Parsons is entitled to recover treble damages and statutory damages of at least $2,000,000 for each type of good or service for which Defendants used the counterfeit Parsons Marks.

39.     Defendants' conduct averred herein was intentional and in conscious disregard of Parsons' rights.  Pursuant to 15 U.S.C. § 1117(a), Parsons is entitled to an award of treble damages and/or enhanced profits against Defendants.

40.     Pursuant to 15 U.S.C. § 1118, Parsons is further entitled to, and hereby seeks, an order for the destruction of all materials, including, without limitation, all labels, signs, prints, packages, and advertisements bearing the Parsons Marks or any other marks confusingly similar to the Parsons Marks.

41.     Defendants' acts make this an exceptional case under 15 U.S.C. §1117(a), and Parsons is entitled to an award of attorneys' fees and costs.

#39188358 v1

**<u>SECOND CAUSE OF ACTION</u>**
**[False Designation of Origin/Cyberpiracy – 15 U.S.C. § 1125(a) and (d)]**
(By Parsons Against All Defendants)

42.    Parsons realleges and incorporates by reference paragraphs 1-29 of this Complaint as if fully set forth herein.

43.    Defendants, through the acts and omissions described herein, have used in commerce words, terms, names, symbols, false designations or origin, false or misleading descriptions of fact, and/or false or misleading representations of fact, in connection with the sale, offering for sale, distribution, and advertising of goods; and, on information and belief, have registered, trafficked in, and/or used a domain name that is identical to and/or confusingly similar to the Parsons Marks, with a bad faith intent to profit therefrom.

44.    Parsons has not authorized, licensed, or given permission to Defendants, or any of them, to reproduce, counterfeit, imitate, or use the Parsons Marks in any manner whatsoever including, without limitation, on the infringing products and/or services being marketed, advertised, sold, imported, or distributed by Defendants under or through use of the Parsons Marks.

45.    Defendants' acts described herein are likely to cause confusion, including initial interest confusion, reverse confusion, and post-sale confusion, or to cause mistake or to deceive consumers as to the affiliation, connection, or association of Defendants with Parsons, and/or as to the origin, sponsorship, or approval of Defendants' goods, in violation of 15 U.S.C. § 1125(a).

46.    As a direct and proximate result of Defendants' creation of a false impression of association between Parsons and Defendants, and Defendants' use of a false designation of origin and false or misleading representation of fact in connection with Defendants' products and/or services, Parsons has been damaged and will continue to be damaged.

47.    Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Parsons great and irreparable injury that cannot fully be compensated or measured in money.  Parsons has no adequate remedy at law.  Parsons is entitled to preliminary and permanent injunctions prohibiting acts and conduct that are likely to continue to cause

confusion, mistake, or to deceive as to source, origin, affiliation, approval, or sponsorship. Pursuant to 15 U.S.C. § 1116(a), Parsons is entitled to an order enjoining Defendants from further infringing the Parsons Marks.

48.    Pursuant to 15 U.S.C. § 1117(a), Parsons is entitled to an order requiring Defendants to account to Parsons for any and all profits derived by Defendants from its actions, and to an order awarding all damages sustained by Parsons and caused by Defendants' conduct.

49.    Defendants' conduct alleged herein was intentional and in conscious disregard of Parsons' rights.  Pursuant to 15 U.S.C. § 1117(a), Parsons is entitled to an award of treble damages and/or enhanced profits against Defendants.

50.    Pursuant to 15 U.S.C. § 1118, Parsons is further entitled to, and hereby seeks, an order for the destruction of all materials, including, without limitation, all labels, signs, prints, packages, and advertisements bearing the Parsons Marks or any other marks confusingly similar to the Parsons Marks.

51.    Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a), and Parsons is entitled to an award of attorneys' fees and costs.

## THIRD CAUSE OF ACTION
### [Federal Trademark Dilution – 15 U.S.C. § 1125(c)]
(By Parsons Against All Defendants)

52.    Parsons realleges and incorporates by reference paragraphs 1-29 of this Complaint as if fully set forth herein.

53.    Defendants' use of the Parsons Marks occurred after the Parsons Marks became famous and has caused and will continue to cause dilution of the distinctive quality of the Parsons Marks in violation of 15 U.S.C. § 1125(c).

54.    As a direct and proximate result of Defendants' conduct described herein, Parsons has been damaged and will continue to be damaged by Defendants' dilution of the Parsons Marks.  Pursuant to 15 U.S.C. §§ 1116(a) and 1125(c), Parsons is entitled to an order enjoining Defendants from using the Parsons Marks, and any other marks dilutive of the Parsons Marks, in

connection with the manufacture, distribution, marketing, advertising and sale of any products or services.

55.     Defendants' conduct described herein was intentional and in conscious disregard of Parsons' rights.  Pursuant to 15 U.S.C. § 1117(a), Parsons is entitled to an award of treble damages against Defendants.

56.     Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a), and Parsons is entitled to an award of attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
### [State Trademark Dilution And Injury to Reputation – Fla. Stat. § 495.151]
(By Parsons Against All Defendants)

57.     Parsons realleges and incorporates by reference paragraphs 1-29 of this Complaint as if fully set forth herein.

58.     The Parsons Marks constitute valid trademarks under state law, are famous, distinctive, and have acquired secondary meaning.

59.     Defendants' use of the Parsons Marks is causing a likelihood of dilution of the Parsons Marks because the Parsons Marks are deprived of their exclusive capacity to identify and distinguish Parsons, The Alan Parsons Project, and The Alan Parsons Live Project.

60.     Defendants' acts described herein constitute injury to business reputation and/or dilution within the meaning of Fla. Stat. § 495.151.

61.     Pursuant to Fla Stat. § 495.151, Parsons is entitled to an injunction prohibiting Defendants, and each of them, from continuing their use of the Parsons Marks and any other marks dilutive of or harmful to the Parsons Marks.

## FIFTH CAUSE OF ACTION
### [Common Law Trademark Infringement]
(By Parsons Against All Defendants)

62.     Parsons realleges and incorporates by reference paragraphs 1-29 of this Complaint as if fully set forth herein.

63.     Defendants' acts described herein constitute common law trademark infringement under state law.

64.     Defendants, through the acts and omissions described above, have used and continue to use, in commerce words, terms, names, symbols, and devices which are confusingly similar to those of Parsons, in a manner that is likely to cause confusion, including initial interest confusion, reverse confusion, and post-sale confusion, or mistake or to deceive as to the affiliation, connection, or association of Defendants with Parsons, or as to the origin of Defendants' goods, or as to the sponsorship or approval of Defendants' goods by Parsons, which is not the case.

65.     Parsons has been damaged and will continue to be damaged by Defendants' infringing activities.

66.     Parsons is entitled to preliminary and permanent injunctions prohibiting Defendants from continuing the infringing practices described herein.

67.     Parsons is also entitled to profits and damages arising from Defendants' wrongful use of the Parsons Marks.

68.     Defendants' conduct has been and continues to be willful, wanton, fraudulent, oppressive, malicious, and in conscious disregard of Parsons' rights, thereby justifying an award of punitive and/or exemplary damages in a substantial amount according to proof at trial.

**SIXTH CAUSE OF ACTION**
**[Common Law Unfair Competition]**
(By Parsons and Appertaining Against All Defendants)

69.     Parsons and Appertaining reallege and incorporate by reference paragraphs 1-29 of this Complaint as if fully set forth herein.

70.     Defendants' acts described herein constitute unfair competition under the common law.

71.     As a direct and proximate result of Defendants' conduct, Parsons and Appertaining are entitled to recover all proceeds and other compensation received or to be received by Defendants arising from their unfair competition.  Parsons and Appertaining request

#39188358 v1

the Court to order Defendants to render an accounting to ascertain the amount of such profits and compensation.

72.      As a direct and proximate result of Defendants' unfair competition, Parsons and Appertaining have been damaged and Defendants have been unjustly enriched, in an amount that will be proved at trial.   Such damages, restitution, and/or disgorgement should include a declaration by this Court that Defendants are constructive trustees for the benefit of Parsons and Appertaining and an order that Defendants convey to Parsons and Appertaining all the gross receipts received or to be received that are attributable to Defendants' unfair competition.

73.      Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Parsons and Appertaining great and irreparable injury that cannot fully be compensated or measured in money.   Parsons and Appertaining have no adequate remedy at law. Parsons and Appertaining are entitled to preliminary and permanent injunctions prohibiting further unfair competition by Defendants.

74.      Defendants' conduct has been and continues to be willful, wanton, fraudulent, oppressive, malicious, and in conscious disregard of Parsons' and Appertaining's rights, thereby justifying an award of punitive and/or exemplary damages in a substantial amount according to proof at trial.

**SEVENTH CAUSE OF ACTION**
**[Infringement of Statutory Right of Publicity –  Fla. Stat. § 540.08]**
(By Parsons Against All Defendants)

75.      Parsons realleges and incorporates by reference paragraphs 1-29 of this Complaint as if fully set forth herein.

76.      Parsons has a valuable right of publicity in his name and image, which has become valuable throughout Florida , the United States, and the world, and is invested with enormous goodwill in the eyes of the public and is a property right with substantial commercial value (his "Right of Publicity").

#39188358 v1

77.     At all times relevant hereto, Parsons had, and still has, the sole and exclusive right to authorize and license the use of his Right of Publicity, and he has never consented to the unlawful uses made by Defendants, including as alleged herein.

78.     Through the acts and conduct alleged herein, Defendants have knowingly and purposefully, without any right or authorization, misappropriated and continue to misappropriate Parsons' Right of Publicity, including through acts in Florida and throughout the United States.

79.     The conduct of Defendants as alleged herein constitutes a violation of Fla. Stat. § 540.08.

80.     As a proximate result of Defendants' misappropriations of his Right of Publicity, Parsons has suffered and continues to suffer severe damages to be fully set forth at trial.

81.     Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Parsons great and irreparable injury that cannot fully be compensated or measured in money.  Parsons has no adequate remedy at law.  Parsons is entitled to preliminary and permanent injunctions prohibiting further misappropriations of his Right of Publicity.

82.     Defendants' conduct has been and continues to be willful, wanton, fraudulent, oppressive, malicious, and in conscious disregard of Parsons' rights, thereby justifying an award of punitive and/or exemplary damages in a substantial amount according to proof at trial.

### EIGHTH CAUSE OF ACTION
**[Misappropriation of Common Law Right of Publicity]**
(By Parsons Against All Defendants)

83.     Parsons realleges and incorporates by reference paragraphs 1-29 and 76-78 of this Complaint as if fully set forth herein.

84.     The conduct of Defendants as alleged herein constitutes a misappropriation of Parsons' common law Right of Publicity, including through acts and distributions in  Florida and throughout the United States.

85.     As a proximate result of Defendants' misappropriations of his Right of Publicity, Parsons has suffered and continues to suffer severe damages to be fully set forth at trial.

86.     Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Parsons great and irreparable injury that cannot fully be compensated or measured in money.  Parsons has no adequate remedy at law.  Parsons is entitled to preliminary and permanent injunctions prohibiting further misappropriations of his Right of Publicity.

87.     Defendants' conduct has been and continues to be willful, wanton, fraudulent, oppressive, malicious, and in conscious disregard of Parsons' rights, thereby justifying an award of punitive and/or exemplary damages in a substantial amount according to proof at trial.

**NINTH CAUSE OF ACTION**
**[Breach of Fiduciary Duty]**
(By Parsons and Appertaining Against All Defendants)

88.     Parsons and Appertaining reallege and incorporate by reference paragraphs 1-29 of this Complaint as if fully set forth herein.

89.     Defendants had and have fiduciary duties to Parsons and Appertaining, including but not limited to duties of loyalty and confidentiality.  Such duties included and include, but are not limited to, the duties:  (a) during the term of their agency, to refrain from competing with Parsons and Appertaining; (b) during the term of their agency, to refrain from taking action on behalf of or otherwise assisting Parsons' and Appertaining's competitors; (c) during the term of their agency, to refrain from engaging in disloyal acts looking to future competition with Parsons and Appertaining; (d) to act loyally for Parsons' and Appertaining's benefit in all matters connected with the agency relationship; (e) including after the termination of the agency relationship, to refrain from using property of Parsons and Appertaining for Defendants' own purposes or those of a third party, or damaging Parsons' and Appertaining's property, including but not limited to the Parsons Marks; (f) including after the termination of the agency relationship, not to use or communicate confidential information of Parsons and Appertaining for Defendants' own purposes or those of a third party; (g) including after the termination of the agency relationship, to refrain from contributing to, inducing, assisting, and/or enabling the commission of tortious conduct by third persons toward Parsons and Appertaining; and (h) including after the termination of the agency relationship, using knowledge that is inaccessible

23

outside Parsons' and Appertaining's private and confidential business organization to inflict maximum injury on and/or enhance injury to Parsons and Appertaining based on, by way of example only, knowledge of Parsons and Appertaining's business plans and/or vulnerabilities at particular times.

90.     Defendants have breached and continue to breach said duties, including as set forth herein.

91.     As a proximate result of Defendants' breaches of said duties, Parsons and Appertaining have suffered and continue to suffer severe damages, including but not limited to the loss and diminishment of the value of the Parsons Marks, diminishment of revenues derived from concert and personal appearances, incurring of attorneys' fees and other expenses including pursuant to the "tort of another" or "wrongful act" doctrine, and additional damages to be fully set forth at trial.  The amount of such damages is in the many millions of dollars.

92.     Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Parsons and Appertaining great and irreparable injury that cannot fully be compensated or measured in money.  Parsons and Appertaining have no adequate remedy at law. Parsons and Appertaining are entitled to preliminary and permanent injunctions prohibiting further breaches of Defendants' fiduciary duties to them.

93.     Defendants' conduct has been and continues to be willful, wanton, fraudulent, oppressive, malicious, and in conscious disregard of Parsons' and Appertaining's rights, thereby justifying an award of punitive and/or exemplary damages in a substantial amount according to proof at trial.

## TENTH CAUSE OF ACTION
### [Breach of Contract]
(By Appertaining Against Regna and WEAA)

94.     Appertaining realleges and incorporates by reference paragraphs 1-29 of this Complaint as if fully set forth herein.

95.     Regna and WEAA have breached the Contract by, *inter alia*, failing to pay to Appertaining the $35,000 that they are holding for it as constructive trustees, representing its compensation for Parsons' performance at On The Blue Cruise, and otherwise as alleged herein.

96.     Appertaining has fulfilled all conditions of the Contract with respect to said matters, except to the extent any such conditions have been excused by Regna's and WEAA's acts or omissions.

97.     As a proximate result of Regna's and WEAA's breaches of said duties, Appertaining has suffered and continues to suffer severe damages, including but not limited to diminishment of revenues derived from concert and personal appearances, incurring of attorneys' fees and other expenses including pursuant to the "tort of another" or "wrongful act" doctrine, and additional damages to be proved at trial.

### ELEVENTH CAUSE OF ACTION
**[Conversion]**
(By Appertaining Against All Defendants)

98.     Appertaining realleges and incorporates by reference paragraphs 1-29 of this Complaint as if fully set forth herein.

99.     As alleged herein, Defendants, prior to commencement of this action, wrongfully converted to their own personal use $35,000 that they were and are holding as constructive trustees for Appertaining.   Said monies were a specifically identifiable fund belonging to Appertaining which Defendants had a duty to maintain separately for Appertaining's benefit.

100.    As a proximate result of Defendants' conversion, Appertaining has suffered and continues to suffer severe damages to be fully set forth at trial.

101.    Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Appertaining great and irreparable injury that cannot fully be compensated or measured in money.   Appertaining has no adequate remedy at law.   Appertaining is entitled to preliminary and permanent injunctions ordering Defendants to immediately pay such monies to Appertaining, as well as any and all future monies that they receive that belong to Appertaining.

102.    Appertaining is further entitled to the imposition of a judicial constructive trust and accounting with respect to the $35,000 and any and all other monies belonging to Appertaining that are being unlawfully retained by Defendants or are received by them in the future.

103.    Defendants' conduct has been and continues to be willful, wanton, fraudulent, oppressive, malicious, and in conscious disregard of Appertaining's rights, thereby justifying an award of punitive and/or exemplary damages in a substantial amount according to proof at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Parsons and Appertaining pray:

1.      For actual damages according to proof, which Parsons and Appertaining preliminarily calculate to be many millions of dollars.

2.      For an Order awarding statutory damages of two million dollars ($2,000,000) for each willful use by Defendants of a counterfeit mark, or such other amount as the Court deems just, pursuant to 15 U.S.C. § 1117(c).

3.      For an accounting and award of Defendants' profits derived in any way from their unlawful conduct, or for treble Parsons' actual damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b).

4.      For restitution and/or disgorgement of all amounts obtained by Defendants by means of their wrongful acts described herein.

5.      For punitive and exemplary damages according to proof.

6.      For an award of Plaintiffs' attorneys' fees and full costs according to law.

7.      For an award of pre-judgment interest.

8.      For a preliminary and permanent injunction enjoining and restraining Defendants, and all their officers, directors, stockholders, owners, agents, representatives, servants and employees, and all those acting in concert or privity therewith, from directly or indirectly violating Plaintiffs' rights as alleged herein.

9.      For imposition of a constructive trust as set forth herein.

#39188358 v1

10.     For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all issues so triable.

DATED:  January 24, 2020.

                                        Respectfully submitted,

                                        GRAY ROBINSON, P.A.
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida 33131
Phone: (305) 416-6880
Fax: (305) 416-6887
karen.stetson@gray-robinson.com

By: /s/ Karen L. Stetson
        Karen L. Stetson
        Florida Bar No.: 742937
        Jonathan L. Gaines
        Florida Bar No.: 330361
and

JEFFER MANGELS BUTLER & MITCHELL LLP
(*pro hac vice to be filed*)
JEFFREY D. GOLDMAN (Bar No. 155589)
jgoldman@jmbm.com
ROD S. BERMAN (Bar No. 105444)
rberman@jmbm.com
REMI T. SALTER (Bar No. 316327)
rsalter@jmbm.com
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-4308
Telephone:     (310) 203-8080
Facsimile:     (310) 203-0567