UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALAN PARSONS; and
APPERTAINING LLC,

    Plaintiffs,

v.                                           Case No. 6:20-cv-123-Orl-37LRH

JOHN REGNA; WORLD
ENTERTAINMENT ASSOCIATES OF
AMERICA, INC.; and DOES 1-20,

    Defendants.

### ORDER

Defendants World Entertainment Associates of America, Inc. ("**WEAA**") and John Regna ("**Regna**") move to dismiss the complaint (Doc. 1 ("**Complaint**")) for lack of subject matter jurisdiction. (Doc. 28 ("**Motion**").) Plaintiffs oppose. (Doc. 37.) The Court denies the Motion.

### I.    BACKGROUND

Plaintiff Alan Parsons ("**Parsons**"), after finding success behind the scenes as a sound engineer—working on the Beatles' *Abbey Road* and Pink Floyd's *The Dark Side of the Moon*—became famous in his own right as one of two founding members of the Alan Parsons Project (the other being Eric Woolfson ("**Woolfson**")). (Doc. 1, ¶ 3.) Over the course of its eleven-year partnership, from 1976 to 1987, the Alan Parsons Project created, wrote, and recorded multiple platinum albums, with seventeen Billboard Top 100 singles.

(*Id.*) After an amicable split, Parsons began performing live as "The Alan Parsons Live Project" in 1994 and has continued touring since. (Doc. 19-1, ¶ 5.)[1]

Fast forward to 2009, Regna and his concert-promotion company, WEAA, began to aggressively solicit Parsons' business. (Doc. 1, ¶¶ 1, 4.) Regna runs WEAA from Florida. (*Id.* ¶ 9.) Parsons entered into a contract with Regna, but after nine years of working together Parsons found Regna's behavior increasingly "outrageous and unprofessional" and terminated the relationship. (*Id.* ¶¶ 4, 23.) Regna, according to Parsons, didn't take that well: "angered by the loss of his most prominent and prestigious client, Regna has commenced a spiteful, global campaign to destroy Parsons' name and earning ability and threaten his livelihood." (*Id.* ¶ 4.)

This "global campaign" was a planned European tour of former musicians-for-hire that had worked for Alan Parsons and the Alan Parsons Project. (*Id.* ¶ 25.) From their offices in the United States, Regna and WEAA solicited these former Alan Parsons session musicians ("**The Project Band Musicians**"). (*Id.*; *see also* Doc. 19-1, ¶ 11.) Regna and WEAA promoted and advertised this new band as: "The Original Alan Parsons Project Band," "The Men Who Made the Records Thirty Years in the Making – Starring the Alan Parsons Project Original Musicians," and "The Project – Original Voice Original Musicians Of The Alan Parsons Project And Friends." (Doc. 1, ¶ 25.) From their Florida office, Regna and WEAA maintained internet domain names that are "confusingly

---

[1] For Rule 12(b)(1) factual attacks on subject matter jurisdiction, the court may go beyond the pleadings and consider extrinsic evidence. *See Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).

similar" to Parsons' trademarks and sent email blasts to concert promoters—including to an agent in New York—soliciting bookings for this band. (*Id.*, ¶¶ 9–10, 28(c); Doc. 19-1, ¶¶ 11, 37.)

So Parsons took legal action—in Europe. He sent cease and desist letters to stop a planned concert in Spain. (Doc. 19-1, ¶ 31.) In response, The Project Band, which Regna manages, filed a claim of its own with the High Court of Justice of England and Wales in the United Kingdom ("**UK Action**"). (Doc. 35, ¶ 15; Doc. 19-1, ¶¶ 26–27.) Parsons then sought a preliminary injunction in Spain which was granted but then stayed. (Doc. 19-1, ¶ 32.) The Spanish concert went forward as planned. *(Id.* ¶ 33.)

Eventually, Parsons and Appertaining LLC (Parson's "loan-out" company) sued Regna and WEAA in the United States. (Doc. 1.) Plaintiffs allege, among other things: federal, state, and common law trademark violations; and breach of fiduciary duties. (*Id.*) Parsons is also seeking a preliminary injunction. (Doc. 19.) Regna moves to dismiss the Complaint for lack of subject matter jurisdiction. (Doc. 28.) With Parsons' response (Doc. 37), the matter is ripe.

## II.   LEGAL STANDARDS

Attacks on subject matter jurisdiction may be facial or factual. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). For facial attacks, a court accepts the complaint's allegations as true. *Id.* Factual attacks require more inquiry. *Garcia v. Copenhaver, Bell & Assoc., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997). "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear

the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (citation omitted). The court may go beyond the pleadings and consider extrinsic evidence. *See Carmichael*, 572 F.3d at 1279.

### III. ANALYSIS

Regna and WEAA move to dismiss for lack of subject matter jurisdiction, arguing the UK Action bars Parsons' Lanham Act claims here (and so the Complaint fails to establish federal question jurisdiction).[2] (Doc. 28.) Defendants are wrong.

True, for "acts of trade-mark infringement . . . *consummated in a foreign country* by a citizen and resident of the United States," courts must consider whether exercising jurisdiction would interfere with the sovereignty of another nation. *Steele v. Bulova Watch Co.*, 344 U.S. 280, 281 (1952) (emphasis added); *see also Int'l Cafe, S.A.L. v. Hard Rock Cafe Int'l (U.S.A.), Inc.*, 252 F.3d 1274, 1278 (11th Cir. 2001). But the Court is not faced solely with acts consummated internationally. No, here there are two U.S. defendants (Regna and WEAA) who are allegedly violating U.S. trademarks by: running their business in the U.S., soliciting former musicians to play in an "imposter band" in the U.S., maintaining infringing internet domains in the U.S., and drafting and sending emails from the U.S to solicit infringing bookings. (Doc. 1, ¶¶ 9–10, 25, 28; Doc. 19-1, ¶¶ 11, 37).

---

[2] Defendants also argue Counts VI through XI should be dismissed under the first to file rule. (Doc. 28, ¶¶ 65–68.) But the first to file rule applies only to simultaneous federal court cases—not state and federal cases. *See Manual v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005); *Schrenkel v. LendUS, LLC,* No. 18-382, 2018 WL 4002112, *5 (M.D. Fla. Aug. 22, 2018). So this argument fails.

While the effects of these violations may be felt abroad, many of the violations occurred here—and unquestionably it is within a district court's jurisdiction to hear a claim between U.S. citizens for alleged violations of federal law occurring within the United States. *See Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (affirming jurisdiction where "many of the alleged illegal activities, including locating and negotiating prospective buyers and arranging for shipment [of infringing goods] occurred in the United States").

If the Court orders a preliminary injunction, it will consider international comity concerns when determining the scope of the injunction. For now, however, there is sufficient evidence of domestic violations of the Lanham Act to establish jurisdiction. *See Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1179-80 (11th Cir. 1994) (finding jurisdiction exists where negotiations occurred in the U.S., sales were orchestrated from a Florida office, and products were transported through a U.S. free trade zone).

## IV.   CONCLUSION

It is **ORDERED AND ADJUDGED** that Defendants World Entertainment Associates of America, Inc. and John Regna's Joint Motion to Dismiss (Doc. 28) is **DENIED.**

**DONE AND ORDERED** in Chambers in Orlando, Florida, on March 12, 2020.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record